## THE PEOPLE, EX REL. SAMUEL TOBEY, v. BYRON McNEAL.

*Election—Ballot—Intention of voter—Parol evidence.*

1. The ballot *as cast* by an elector must be held to express his *intention*, and a *different* one cannot be shown by *parol* testimony.

    So *held*, where the *true* name of the candidate was Samuel Tobey, but on the ballot it was printed Samuel Toley. *People v. Tisdale*, 1 Doug. 59; *People v. Higgins*, 3 Mich. 233; *People v. Cicott*, 16 Id. 283; *Keeler v. Robertson*, 27 Id. 129.

    [MORSE, J., dissents from the doctrine laid down in *People v. Tisdale;* see opinion.]

2. Parol evidence is admissible to show *what* a ballot was *as cast*.

    So *held*, where a slip containing the name of an opposing candidate was pasted over the name of his opponent on the ticket as voted, but was unintentionally detached by the inspectors while canvassing the votes, and, on a contest, proof of such facts was admitted by the trial court, and the ballot counted for the candidate named on the slip.

Case made from Kent. (Montgomery, J.) Argued October 7, 1886. Decided October 21, 1886.

Information to test right to office. Relator brings error. Affirmed. The facts are stated in the opinion.

*Fred A. Maynard* and *Lincoln B. Livingston,* for relator.

*J. C. FitzGerald* (*Charles Chandler*, of counsel), for respondent.

CHAMPLIN, J. This is an information in the nature of a *quo warranto* to try the title of Byron McNeal to the office of supervisor of the township of Byron, Kent county.

The case was tried in the circuit court for the county of Kent, before the court without a jury, and a written finding of facts and conclusions of law was filed, which finding is as follows:

"1. I find that a general township meeting was held in the township of Byron, in said county, on the fifth day of April, 1886; that at said township meeting there were three candidates for the office of supervisor of said township, viz.: Byron McNeal, Samuel Tobey, and Charles R. Stewart.

"2. I find that a statement in writing of the number of votes given at said election for said office of supervisor, and the number of votes received by each person, was made and signed by two members of the board of canvassers, Byron McNeal and M. Jaques, but was not signed by Samuel Tobey, the other member of said board; that said statement set forth that 366 votes were given for said office of supervisor, and that Byron McNeal received 151 votes, Samuel Tobey received 150 votes, and Charles R. Stewart received 65 votes.

"3. I find that the ballot-box containing the ballots cast at said election was properly kept, and was produced and opened on the trial of said cause; that, upon counting the ballots in said box, I found that there were 366 ballots for said office of supervisor, of which 151 were for Samuel Tobey, 150 for Byron McNeal, 1 for Samuel Toley, and 64 for Charles R. Stewart.

"4. Upon announcing the result of the count of the ballots in the box, the counsel for respondent offered to show, by the testimony of witnesses, that a ballot in the box, on which was the name of Samuel Tobey for supervisor, had, when cast, a slip with the name of Byron McNeal over the name of Samuel Tobey. This testimony was received, against the objection of counsel for relator; and from such testimony I find that a ballot was cast at said election with a slip on which was printed the name of Byron McNeal over the name of Samuel Tobey, for supervisor; that when the

board of canvassers were canvassing the votes, after the polls were closed, that slip for Byron McNeal for supervisor was by accident removed from said ballot, and lost; and that said ballot was counted by me for Byron McNeal in determining the number of votes cast for him to be 151.

"5. In counting the ballots, on one of the ballots headed 'Prohibition Ticket' I find that the name of Charles R. Stewart and the words 'For Supervisor' are erased with pencil, and the name of Byron McNeal written on said ballot opposite the words 'For Supervisor;' but, as the words 'For Supervisor' were erased, I find that such vote is not to be counted, and I did not count the same, for said Byron McNeal for supervisor, nor for any other person for supervisor.

"6. I find on the ballot which, in counting the ballots in the box, I counted for Samuel Toley, under the head 'For Supervisor,' the name of Byron McNeal erased with a pencil, and a name written in pencil in the place thereof, which, from inspection, I find to be Samuel Toley. I further find that testimony was offered and given tending to show that the only candidates for supervisor at said election were Byron McNeal, Samuel Tobey, and Charles R. Stewart, and that no person by the name of Samuel Toley resided in or was known to the inhabitants of said township of Byron."

From these facts the court finds, as conclusions of law:

"1. I find that 366 votes were cast for supervisor at said township meeting, and that Byron McNeal received 151 votes, Samuel Tobey received 150 votes, Samuel Toley received 1 vote, and Charles R. Stewart received 64 votes.

"2. I find that it is competent to show, by parol testimony, that a slip for Byron McNeal was over the name of Samuel Tobey on a ballot when it was cast, and that one of said ballots on which Samuel Tobey's name is found should be counted, and I did count the same, for Byron McNeal.

"3. I find that it is not competent to show by parol testimony that the ballot which I read for Samuel Toley was intended for Samuel Tobey, and I find that such ballot should be counted, and I did count the same, for Samuel Toley, and not for Samuel Tobey.

"4. I find that Byron McNeal received the greatest number of votes given for said office of supervisor, and was duly elected to said office at said township meeting, and has duly qualified as such, and that he is not intruding into said office, but rightfully holds the same by virtue of said election.

"5. I find that judgment should be entered in this cause in favor of said respondent, and against said relator, for his costs in this behalf, to be taxed, including the usual attorney fee in civil cases.

"ROBERT M. MONTGOMERY,
"Circuit Judge."

Upon this record seven errors are assigned, but two questions only are presented by them:

1. Whether it was competent to introduce evidence to show that the ballot for Samuel *Toley* was intended for Samuel *Tobey*.

2. Whether it was competent to show, by *parol* testimony, that when the ballot-box was first opened, and the ballots counted by the inspectors of election, a slip for Byron McNeal, for the office of supervisor, was pasted over the name of Samuel Tobey, and had been removed and lost, either accidentally or designedly, after the ballots had been counted by the inspectors.

Upon the first point above stated, we think the ballot as cast by the elector must be held to express the intention of the voter, and it is not competent to introduce parol evidence to show a different intent. *People v. Tisdale*, 1 Doug. (Mich.) 59; *People v. Higgins*, 3 Mich. 233; *People v. Cicott*, 16 Id. 283; *Keeler v. Robertson*, 27 Id. 129.

Upon the same principle, the ruling of the court upon the second point was correct. The ballot, as cast, showed conclusively that it was the intention of the voter to cast his vote for Byron McNeal, and not for Samuel Tobey. Parol evidence is admissible to show *what* the ballot was *as cast*. Can it be doubted that, if an inspector or other person should erase the name of a person voted for after the box was opened and the ballots exposed and being counted, it could not be shown by parol evidence that the name of the person voted for was not erased when it was first exposed to view? Such doctrine would open the door for the grossest frauds and abuse, and the will of the voter could be nullified with impunity, and a fair count defeated. A worse effect is produced by removing

a slip either intentionally or accidentally; for in this case it makes a difference of two ballots in the result.

The return of the inspectors of election shows that they counted the ballot with the slip for Byron McNeal as a vote for respondent. The ballots were properly kept and produced at the trial. The trial judge was right in receiving parol proof to show a slip upon one of the ballots was for respondent, and was pased over the name of relator; and, from the evidence so admitted, he has found the fact that a ballot was cast with a slip on which was printed the name of Byron McNeal over the name of Samuel Tobey, for supervisor, and that when the board of canvassers were canvassing the votes, after the polls were closed, *that slip* for Byron McNeal for supervisor was by accident removed from said ballot, and lost.

It is urged by relator's counsel that if, in fact, a slip became detached while the inspectors were counting the ballots, it could have been fastened to the ballot in some way by the inspectors, so that it would have been preserved with the ballot, and then, perhaps, testimony might have been admissible on the trial to show its position on the ballot when the box was first opened by the inspectors; and, in case of the loss of the slip, the particular ballot on which the slip was, should have been marked at the time. The statute is silent upon the subject; and, while it would have been proper for the inspectors to have performed the self-imposed duty pointed out by counsel, yet their neglect so to do, in the absence of statutory requirement, ought not to deprive the voter of his vote as cast, or the respondent of his right to have it counted in his favor. The testimony was not admitted to contradict the ballot, but to show what in fact the ballot was, as deposited in the box.

The judgment of the circuit court must be affirmed, with costs.

CAMPBELL, C. J., and SHERWOOD, J., concurred.

MORSE, J.  I arrive at the same conclusion as my Brother CHAMPLIN, but reach such result differently.  When the intention of the voter is plain, upon the *face* of the ballot, to the inspectors of election, whose duty it is to count and publish the votes, such intention should be given effect.  No technicalities should stand in the way of the citizen in the exercise of his highest privilege.  His wish, when known, should be enforced.  His vote should be counted as he intended it to be counted, if his intention is plainly apparent to these whose duty it is to count it.

I cannot let this occasion pass without expressing my dissent from the doctrine laid down by this Court in *People v. Tisdale*, 1 Doug. 59, and since reluctantly followed in *People v Higgins*, 3 Mich. 233, and *People v. Cicott*, 16 Id. 283, that a ballot containing the initials only of the given names of a candidate cannot be counted for him.  It is at variance with the rule in almost all the states of the Union, and there is no sense or justice in it.  When James A. Dyer and one or two other persons of entirely different names are running for the same office, every one at once knows that a ballot cast for J. A. Dyer is intended, without any doubt, for James A. Dyer.  If so, why not count it as the voter meant it should be counted?  Under the rule thus established in 1 Doug., many men have held and enjoyed the honors and profits of offices to which they were never elected by the people, and to which they and everybody else knew they were not elected; and men who were really elected have not been permitted to qualify and enter upon the duties which the majority of the electors intended they should perform.

In the case of *People v. Cicott*, Judges CHRISTIANCY and GRAVES both adhered to the decision in *People v. Tisdale*, against their own opinion of its justice or soundness, because they did not think it wise to disturb the precedent so long established.  Judge COOLEY expressed himself strongly against the reason and justice of the rule, and regretted

that the other members of the Court would not join with him in overturning it.

Most men are as well, if not better, known by their initials than by their full names. The signature of any officer to any official document by the initial letters of the first or given names is just as valid and effectual in this State as the full name. There is no sound reason why a vote for J. A. Dyer should not be counted for James A. Dyer, in a case where no other J. A. Dyer is a candidate, or living within the district covered by the office. The rule established in this State has but one effect, to wit: to deprive, in many cases, the rightfully elected officer from taking possession of the office to which the electors have chosen him, thus defeating the will of the people.

Believing in the right of the people, at all times and in all places, to have their ballots counted fairly as cast, in my opinion, the ballot whereon the name Charles R. Stewart, the prohibition candidate for supervisor, was erased, and the name Byron McNeal written opposite the words "For Supervisor," should have been counted for McNeal. The erasure of the words "For Supervisor" upon this ballot was evidently a mistake, and it is plain upon the face of the ballot itself that the voter intended to vote for McNeal for supervisor.

No one having common sense and intelligence enough to perform the duties of an inspector of elections could fail to know and be satisfied, by a mere inspection of the ballot, that the man who deposited it in the box meant to vote for McNeal for supervisor. It needed no extrinsic evidence to ascertain the intention of the voter; but, under the technical ruling of the circuit judge, influenced probably by the decision in *People v. Tisdale,* the intent of the voter, which is as clear as noonday, is defeated, and he is deprived of the right of suffrage.

It is also clearly apparent that the writing which the judge read Samuel Toley was meant for Samuel Tobey. Every

inspector knew, when the votes were counted, that there was no man by the name of Samuel Toley in the township of Byron, and that the vote, if not really written Samuel Tobey, was certainly intended to be so written.

The circuit judge, as well as all the members of this Court, know for whom the ballot was intended, and it is simply a perversion of justice to be scanning with the naked eye, or exploring with a microscope, to find the lack of a loop in a letter to defeat the known will of an elector. Common sense applied to the counting of votes is better than the technical theories and distinctions laid down in some of the law books. If it had not been for this decision in *People v. Tisdale*, if no law had been resorted to or known by the inspectors, but the plain, honest men, constituting the board, had followed the plain dictates of their own good sense and justice, this ballot would have been counted for Samuel Tobey, and the will of the voter been expressed. As it is, he has also been deprived of his vote for supervisor.

It happens in this case that the disenfranchisement of two electors does not alter the result, although both are deprived of their votes for supervisor, and each of the two candidates loses a vote. But there are plenty of cases where the loss to the elector of the franchise is also a loss to another of an office which, in right and justice, he ought to hold.

In *People v. Kennedy*, 37 Mich. 67, this Court took a step in the right direction in declaring that a ballot cast for John Jochim was presumptively intended for John W. Jochim, when it did not appear that there were two persons named John Jochim in Ishpeming.

Applying this newer and better doctrine to the case at bar, and it not appearing that there was a person by the name of Samuel Toley, and it expressly appearing there was not, in Byron, the vote should have been counted for Samuel Tobey.

When we all know, from the ballot itself, that it was intended for Samuel Tobey, no amount of theorizing that it

might sometime happen that there would be two men of the same initials, who might be running for the same office, and yet have different full names, or that there might sometime be a Samuel Toley pitted against a Samuel Tobey for office, can excuse or justify the plain violation of the spirit of the law, and the deprivation of the right of the elector to have his ballot counted as he intended, when that intention is clear beyond cavil. A bad precedent should not always be followed.